BRADY, Justice.
Appellant, Frierson Building Supply Company, plaintiff below, instituted suit against Lee Burns, Lee Burns & Company, Albert D. Bates, Homestead Savings & Loan Association and First National Bank of Jackson, Mississippi, seeking to recover $6,941.77 for building materials furnished by the appellants to appellees Lee Burns and Lee Burns & Company.
The facts and issues upon which the determination of this case is predicated are sufficiently outlined in the following opinion, and expatiation is necessary.
"On April 21st, 1965, the plaintiff filed this suit against the above named parties seeking to enforce a lien.
“On August 13th, 1965, the plaintiff filed an amended petition to enforce lien against said parties and added the name of Nannie V. Bates.
“The prayer of the amended petition is that a judgment be entered against Lee Burns, Lee Bums & Company, Homestead Savings and Loan Association, and First National Bank of Jackson in the amount of $6,941.77, and that the court will enforce and declare a lien on behalf *423 of the plaintiff against the herein above described property superior and having priority over the lien of the deed of trust in favor of Homestead Savings and Loan Association.
“By agreement a jury was waived and the court heard the case sitting as judge and jury.
“The record was that by an instrument entitled ‘Memorandum of the Sale and Purchase of Real Estate’ Lee Burns & Company and Lee Burns, Seller, agreed to sell to Albert Bates, Buyer, Lot 5, Block 11, of Allen Addition, Flora, Madison County, Mississippi, for the sum of $17,-000.00. There was no house on the lot on that date but a residence was to be constructed and upon completion a warranty deed was to be executed and possession of property delivered. The petition alleges that on about January Sth, 1965, Bates deeded the property to Lee Burns & Company. On January 4th, 1965, Lee Burns & Company and Lee Burns executed a note in the sum of $6,000.00 to the First National Bank of Jackson and secured it by deed of trust on the said property. It is conceded that this was a construction loan and that the bank made additional advancements.
“Petitioner claims that between January 7th, 1965, and April 1, 1965, it supplied building materials and supplies to defendants Lee Burns and Lee Burns & Company in the construction of the dwelling house on the said lot in the total net amount of $6,941.77. Plaintiff admits that it did not place of record a notice of the existence of any material lien as required by law.
“On April 12th, 1965 Lee Burns & Company conveyed by warranty deed to Albert Llell Bates and Nannie V. Bates as joint tenants the said lot.
“The Bates obtained a loan from the Homestead Savings and Loan Association and executed a deed of trust on April 12th, 1965, which was duly recorded on April 13th, 1965.
“It is admitted that the Bates are innocent purchasers for value without notice. It is also conceded that Plomestead Savings and Loan Association is an innocent mortgagee without notice unless it had actual notice through its attorney and representative, Mr. Charles R. Mayfield, Jr.
“From the proceeds of the loan obtained the First National Bank was paid the amount due it which was secured by a deed of trust properly recorded and the deed of trust cancelled. So at the time of the filing on the suit the First National Bank had no lien on the property. The plaintiff by its prayer does not contend for priority of liens but asserts it is entitled to a judgment against the bank for money had and received.
 “It would not be simple justice to the Bates for the court to ‘enforce and declare a lien’ on behalf of the plaintiff against the property superior and having priority over the lien of the trustee and in favor of the Homestead Savings and Loan Association. They are innocent purchasers for value without notice.
“Although the plaintiff by itsi prayer does not make such request but by its briefs and oral argument request is made that judgment be rendered against the Homestead Savings and Loan Association and that Bates make payment to the plaintiff in the amount of the sum sued for. This contention is based on the claim that Homestead had actual notice through its attorney and agent, Mr. Mayfield. Although Mr. Mayfield was at a meeting in which the affairs of Burns and Frierson were discussed and, although there is some evidence about calls made to Mr. Mayfield, he denied that he had any actual knowledge of any account due at the time of the closing of the loan for materials furnished on the Bates job; he examined the records and took an affidavit from the Bates and from Burns that there were no outstanding accounts due for labor or materials. It is my opinion that there is not enough evidence in the light of all the facts to conclude that *424 •Mr. Mayfield had any actual knowledge. It was incumbent upon the plaintiff to comply with the lien statutes and Mr. Mayfield had a right to expect the plaintiff to do this. As further grounds for my conclusions the evidence will show, which I will discuss later, that money obtained from the First National Bank by Burns and part of the loan from Homestead went to Frierson, which was more than enough to pay the claim that it is now demanding. Therefore, Mr. Mayfield not knowing all the facts and no stop notice or lien record having been filed as required can not be charged with any actual notice. The loan of the Bates with Homestead was properly closed and care and caution were taken..
“Now to the liability of the First National Bank, since its deed of trust has been cancelled they have no lien so the cases involving priority of lien do not apply. But the plaintiff argues that on account of the dealing between Bates and Burns and the fact that the note and deed of trust of Burns to Homestead were in possession of the First National Bank as a pledge that this was an assignment and section 373 of the Code of 1942 applies. I do not agree at the time Burns arranged the loan with the First National Bank he was the title owner of record of the lot. All arrangements were made by him or Lee Burns & .Company and the Bates had nothing to do with it and the bank did not know of any arrangements between Lee Burns & Company and the Bates. It is my opinion that the Bates note and deed of trust to Homestead were delivered to the Bank with many other like papers as a pledge to secure a line of credit from the bank by Homestead, which was needed from time to time by Homestead.
“The plaintiff cannot recover from the bank on the theory of money had and received and invoke the theory of unjust enrichment, there is no question in my mind that out of the $6,000.00, which Lee Burns & Company obtained from the bank on January Sth, $5,391.81 went to Frierson Building Supply Company by check dated the next day, to-wit, January 6th, 1965. When the loan from Bates to Homestead was closed on April 12th, 1965 (see plaintiff’s exhibit 6 to the testimony of witness Bates) $4,105.34 was paid out of the proceeds to Lee Burns & Company and went into its bank account on April 13th, 1965. Following that date Frierson Building Supply Company received several checks from Lee Burns & Company — more than enough to satisfy any claim for materials furnished to Bates. In fact, there is one check dated April 15th, 1965 for $2,698.71 from Lee Burns and Company to Frierson Building Supply Company which is marked ‘Paid in Full.’
“Although the books of the plaintiff show that Lee Burns & Company was charged with the amount claimed for materials on the Bates job, there is a big question in my mind if the plaintiff met the burden of proof by showing that these materials were actually delivered on the job. This proof was attempted by several drivers but I do not recall any delivery tickets being signed by any person or persons on the job who had authority for so doing. However, in the discussion of this case and rendering this opinion I assume that the plaintiff did meet the burden.
“It follows from what I have said and the conclusions reached that the plaintiff is not entitled to recover against any of the defendants.”
The foregoing opinion of the sagacious trial judge, because of its brevity, its clarity, its factual determinations clearly established by the record, and its accurate legal determinations, we adopt in toto as our own. In this we have precedent.
Affirmed.
GILLESPIE, P. J., and JONES, INZER' and ROBERTSON, JJ., concur.